NAZARETH M. HAYSBERT [CA SBN 294431]
    *nazareth@haysbertmoultrielaw.com*
JAMES L. MOULTRIE III [CA SBN 296805]
    *james@haysbertmoultrielaw.com*
**HAYSBERT MOULTRIE, LLP**
700 South Flower Street, Suite 1100
Los Angeles, California 90017
Tel:    (310) 213-7142
Fax:   (757) 727-5085

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SAMUEL CALHOUN ARRINGTON, individually, and through his next best friend, AURELIA CLEO BATTLE <br><br> PLAINTIFF, <br><br> V. <br><br> CITY OF LOS ANGELES, a public entity; DANIEL RAMIREZ, an individual; JAYSON SILLER, an individual;  LEO PEREZ, an individual; ROBERT JAUREZ, an individual; STEVE RUIZ, an individual; JIN KWON, an individual; ANAID BEDEVYAN, an individual; KEVIN SHAW, an individual; THERESA SKINNER, an individual; OMAR ORTIZ, an individual; HOOMAN NAFISSI, an individual; INEZ MILLER, an individual; ARTHUR PAINE, an individual; GREGORY ROBERTS, an individual; AND DOES 1 THROUGH 10, inclusive; <br><br> DEFENDANTS. | Case No. <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983** <br><br> 1. Unreasonable and Excessive Use of Force; <br> 2. Failure to Intervene; <br> 3. *Monell* Liability: Failure to Train, Supervise and Discipline <br><br> **CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 12132** <br><br> 4. Failure to Accommodate <br><br> **STATE CLAIMS** <br><br> 5. Cal. Civ. Code § 52.1 <br> 6. Intentional Infliction of Emotional Distress <br> 7. Assault and Battery <br> 8. Negligence <br><br> **DEMAND FOR JURY TRIAL** |

SAMUEL CALHOUN ARRINGTON, individually, and through his next best friend, AURELIA CLEO BATTLE, ("Plaintiff"), by and through his undersigned counsel, hereby demands a trial by jury and alleges the following against Defendants City of Los Angeles, a public entity, Daniel Ramirez, an individual, Jayson Siller, an individual, Leo Perez, an individual, Robert Jaurez, an individual, Steve Ruiz, an individual, Jin Kwon, an individual, Anaid Bedevyan, an individual, Kevin Shaw, an individual, Theresa Skinner, an individual, Omar Ortiz, an individual, Hooman Nafissi, an individual, Inez Miller, an individual, Arthur Paine, an individual, Gregory Roberts, an individual, and DOES 1 through 10, inclusive, on information and belief except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further discovery.

## I.

## INTRODUCTION

On August 7, 2014, at approximately 2 p.m. in the afternoon, Samuel Calhoun Arrington, a mentally disabled and homeless man of African-American descent, was repeatedly punched, shot with a Taser gun, and hogtied by eight (8) City of Los Angeles police officers after attempting to relax beneath an umbrella on the Venice Beach Boardwalk at the intersection of Sunset Avenue and Ocean Front Walk. According to several video recordings of the incident, Mr. Arrington was unarmed and reclining in a chair at the time, was presenting no threat to himself or anyone else, and was breaking no laws. As a result of the unreasonable and excessive use of force by the Defendant police officers, the pattern and practice of using such force against homeless and mentally ill persons without sufficient emergency or exigent circumstances, and the widespread failure of the City of Los Angeles to adequately train their police officers in the proper and reasonable use of force with respect to homeless and mentally ill persons, Mr. Arrington has sustained significant and permanent injuries to his body and mind.

COMPLAINT FOR DAMAGES

This action seeks justice and redress for the violation of his rights secured by the Constitution and the laws of the United States.

## II.

## <u>VENUE AND JURISDICTION</u>

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 *et seq*., 42 U.S.C. § 12132 and the Fourth and Fourteenth Amendments of the United States Constitution. Subject matter jurisdiction is premised on 29 U.S.C. §§ 1331 and 1343(a)(1), (2), (3), and (4), and the aforementioned statutory and constitutional provisions. The Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events, injuries, and violations of rights alleged herein occurred within the City of Los Angeles, County of Los Angeles, California, which is within this district and because the Defendants, or some of them, reside within the jurisdictional boundaries of this Court.

## III.

## <u>THE PARTIES</u>

3.      Plaintiff Samuel Calhoun Arrington ("Mr. Arrington" or "Plaintiff") is, and was at all times herein mentioned, a citizen of the United States, residing in the City of Los Angeles, County of Los Angeles, State of California. Plaintiff is a qualified individual with a recognized disability pursuant to 42 U.S.C. § 12132. Aurelia Cleo Battle, Plaintiff's next best friend, is an individual residing in the City of Shalimar, County of Okaloosa, State of Florida.

4.      At all times herein mentioned, Defendant City of Los Angeles was a public entity and municipal corporation duly organized and existing under and by virtue of the laws of the State of California.

5.      At all times herein mentioned, Plaintiff is informed and believes, and

COMPLAINT FOR DAMAGES

thereon alleges that individual Defendants Daniel Ramirez, Jayson Siller, Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, Kevin Shaw, Theresa Skinner, Omar Ortiz, Hooman Nafissi, Inez Miller, Arthur Paine, Gregory Roberts, and DOE Defendants 1 through 10 (hereinafter collectively referred to as Defendant Police Officers), were residents of the County of Los Angeles and were police officers, sergeants, detectives, and/or civilian employees, agents and/or representatives of the City of Los Angeles Police Department ("LAPD"),  and were employees and agents of Defendant City of Los Angeles. At all times relevant hereto, said Defendants were acting within the course and scope of their employment as police officers, sergeants, detectives, and/or civilian employees of the LAPD, a department and subdivision of Defendant City of Los Angeles that is located at 200 N Spring St, Los Angeles, CA 90012. At all times relevant herein, said defendants were acting under color of law, under the color of statutes, ordinances, regulations, policies, customs, practices and usages of Defendant City of Los Angeles, its police department, and/or the State of California.

6.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOE defendants 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same shall have been ascertained. Plaintiff is informed and believes, and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

7.    At all times relevant hereto, Defendant Police Officers employed organized, unlawful, and illegal customs and practices of unreasonable and excessive force, falsified evidence and police reports, and intentionally caused emotional distress upon an innocent victim. Said misconduct was known, encouraged, tolerated, and/or condoned by Defendant City of Los Angeles.

COMPLAINT FOR DAMAGES

8.    At all times relevant herein, Defendant Police Officers were acting within the course and scope of their employment as police officers and employees of the City of Los Angeles, which is liable under the principles of *respondeat superior* for said employees' tortious conduct pursuant to California Government Code section 815.2.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.    On June 27, 2011, Mr. Arrington was severely beaten by four Los Angeles police officers. He was immediately hospitalized due to his injuries, which included an approximately 8-inch gash in his head that required 18 staples to close. Mr. Arrington was charged with battery, assault with a deadly weapon on a peace officer, and felony resisting arrest, and was held in jail for over 18 months, where he suffered repeated seizures, episodes of fainting, syncope, vertigo, tinnitus, and severe headaches. The photographic evidence of the medically documented head injury has not been found.

10.    On January 5, 2014, approximately one year after his release from jail, Mr. Arrington was tasered and beaten by Los Angeles police officers, and was hospitalized at West Hills Hospital and Medical Center due to his injuries, which included a laceration to the back of his head, a puncture wound to his stomach, and injuries to his neck and back. He was charged with resisting arrest.

11.    On July 29, 2014, Mr. Arrington was beaten by four City of Los Angeles police officers. Due to the injuries to his neck, back, shoulders and wrists, he was hospitalized at Marina Del Rey Hospital. He was charged with resisting arrest.

12.    On August 7, 2014, while unarmed, presenting no threat to anyone, and having broken no laws, Mr. Arrington was tasered, punched, and violently hogtied by eight (8) City of Los Angeles police officers on the Venice Beach Boardwalk at the intersection of Sunset Avenue and Ocean Front Walk. A total of

COMPLAINT FOR DAMAGES

fourteen (14) officers were involved, at least two of whom had been involved in the July 29, 2014 incident and had reason to know of Mr. Arrington's mental disability. Mr. Arrington was charged with felony resisting arrest. This time, the incident was recorded on video.

13. At the time of the incident, Mr. Arrington was seated on a chair surrounded by eight Los Angeles police officers, with onlookers standing near. According to the police report of the incident, Mr. Arrington was being cited for violating several Municipal Code Boardwalk Ordinances, including using an umbrella that was not sitting upright and that was beyond regulation length, "vending outside a designated area," having "items placed on city bench," having "property outside a designated space," "tampering with city property" and "loudly voicing his religious beliefs." According to the police report of the incident, Defendant Siller requested an additional unit and a supervisor after recognizing Mr. Arrington from the July 29, 2014 beating of Mr. Arrington the week before. Five additional officers soon arrived, including Defendants Bedevyan, Ortiz, Nafissi, Miller, and Skinner. Immediately a tactical plan was organized in case Mr. Arrington became aggressive or combative.

14. As the additional Defendants arrived, a bystander appealed to Defendant Skinner, "Sarge (sic), he is doing nothing wrong, Sarge." Within seconds, the bystander recording video of the incident repeated that "he didn't do anything wrong," and adds that one officer should be removed for "trying to instigate" Mr. Arrington, although it is not immediately clear from the video what the officer was doing. As Defendant Officers continued to circle, their proximity and aggressive stance seemed to agitate Mr. Arrington and at one point he states to the police officers "remove yourselves from my presence or deal with Jehovah God. I'm not going to do nothing to you." At this point Defendant Skinner can be seen holding what appears to be a cell-phone and begins recording Mr. Arrington. Again, a bystander pipes up "he [Mr. Arrington] is not doing anything to anyone."

COMPLAINT FOR DAMAGES

15.    About two minutes into the video, Mr. Arrington cries out "Magnify your glory, Jehovah God." At this point Defendant Skinner approached with her cell-phone extended towards Mr. Arrington, and again, appeared to be recording him. She then placed her left hand on her baton. Meanwhile three other officers have staked out positions within several feet of Mr. Arrington, and all appeared to be standing in the ready position with their hands next to their weapons. Three minutes passed. At no point has Mr. Arrington moved from his chair. The witness recording the video verbalized her frustration, "I see people, homeless or not, hanging out all the time. What is the problem? I would be the first to make a call if there was a problem."

16.    As the above took place, a fifth officer approached Mr. Arrington and began to write out a citation. Again, Mr. Arrington cried out, "Glory of God. Magnify your glory, Jehovah God." At this point that officer approached Mr. Arrington and the other officers started to converge. Mr. Arrington, who has his right hand up at the time, put it down. The officer started to speak to Mr. Arrington and appeared to say that he was citing Mr. Arrington for a ticket. Several moments later, as the officers move closer to Mr. Arrington, the Defendant Officer thrust the ticket toward Mr. Arrington. Surrounded by five officers, with an officer on either side and two flanking him, Mr. Arrington refused to take the ticket from the officer facing him. Defendant Skinner tried and coax Mr. Arrington into taking the ticket, at one point stating "if you do not sign the ticket, we will take you to jail. We don't want to take you to jail." Mr. Arrington did not acknowledge Defendant Skinner's statement, stating at the same time, "I am Jehovah's anointed servant."

17.    As the Defendant Police Officer facing Mr. Arrington continued to hold out the citation, another officer directly behind Mr. Arrington waved his arms around and adjusted his gloves, as if in anticipation.

18.    Again, Defendant Skinner tried to persuade Mr. Arrington to sign the ticket. Again, Mr. Arrington responded that he was "Jehovah's anointed servant."

COMPLAINT FOR DAMAGES

Several seconds later, Mr. Arrington states "I will not . . . ." several times but it is unclear whether he was responding to Defendant Skinner. The bystander recording the cell-phone footage attempted to read the situation: "They know he's not going to sign that because he didn't do anything. But that's what they are hoping so they can take him."

19.    Almost on cue, the officer facing Mr. Arrington put his pen in his breast pocket, set the citation down on the bench, and started moving toward Mr. Arrington, while at the same time asking Mr. Arrington to "stand up." Giving Mr. Arrington only about a second or two to comply, the Defendant Police Officer reached for Mr. Arrington and along with two other officers, started to haul him off his chair and onto the ground. Mr. Arrington did not resist.

20.    Contrary to the police report, at no point during this sequence of events did Mr. Arrington lunge at one of the officers or attempt to grab a gun. As Mr. Arrington is tackled to the ground, one Defendant Police Officer appeared to punch him twice. Two other Defendant Police Officers grabbed him and then the Defendant Police Officer with the Taser gun shot Mr. Arrington in the head.

21.    The number of Defendant Police Officers surrounding Mr. Arrington rose as more officers joined the fray. As the Taser continued to fire, the bystander recording the video can be heard repeatedly screaming, "you don't need to taze him." Meanwhile, Defendant Skinner was seen on video capturing the entire confrontation on her cell-phone.

22.    At no point during the incident did Mr. Arrington struggle with Defendants. Contrary to the police reports which stated that Mr. Arrington had "used his legs to kick at the officers," at all times throughout the video recording Mr. Arrington is completely limp and his legs never move. As seven officers surrounded Mr. Arrington in a tight huddle on the ground, Mr. Arrington is tasered again in the area of his head. Another Defendant rushes up and immediately grabs Mr. Arrington's legs, forcefully bends them across each other and pushes them

COMPLAINT FOR DAMAGES

forcefully towards Mr. Arrington's spine. Over the next few moments, Defendant Police Officers, using batons, knees, arms, and the Taser gun, continue to exercise unreasonable and excessive force on Mr. Arrington. At no point does Mr. Arrington resist.

23.    More Defendant Police Officers arrive and a Defendant officer can be seen prodding Mr. Arrington with his baton while two other Defendants assist with hobbling Mr. Arrington's legs. Mr. Arrington's feet are then twisted into the hobble restraints and the bystander cell-phone footage records a Defendant Police Officer forcefully pulling the hobble restraints on Mr. Arrington's legs until he is heard screaming in pain.

24.    Seconds later a completely shackled Mr. Arrington is lifted by his ankles and arms and is transported to an ambulance.

25.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious, permanent, physical, psychological and emotional injuries, which required and will continue to require medical and/or psychological treatment.

26.    On August 11, 2014, Mr. Arrington was charged with two counts of resisting arrest, and on September 5, 2014, he pled no contest to a charge of misdemeanor resisting arrest pursuant to Penal Code Section 148(a)(1). Despite the conviction, Defendant Police Officers were required to conduct the search or seizure of Mr. Arrington in a reasonable manner, using reasonable force. To the extent Mr. Arrington resisted arrest, the response to his resistance was not objectively reasonable, and as a result, Mr. Arrington has sustained unnecessary injuries.

27.    Furthermore, there were several major discrepancies between the LAPD version of events in the police reports, signed under penalty of perjury, and what transpired in the video recordings obtained of the August 7, 2014 incident, which raise concerns of whether Defendants intentionally fabricated and/or withheld crucial evidence that may have resulted in the dismissal of any criminal

charges against Mr. Arrington:

(a)    The police report states as justification for the use of force on Mr. Arrington that after uniformed police officers made contact with Mr. Arrington for an LAMC violation, "Suspect Arrington lunged at one of the officers and attempted to grab his Sam Browne." Video recordings of the incident do not show Mr. Arrington lunging towards LAPD officers at any point.

(b)    The police report states that before the officers moved Mr. Arrington off of his chair, "officers grabbed Mr. Arrington's arm" and "Mr. Arrington immediately broke the officers hold by aggressively moving his arms forward and then pulling his arms toward his body," and subsequently began yelling profanities. Again, video recordings of the incident show no evidence of this behavior by Mr. Arrington.

(c)    The police report states that other than photographs taken of the officers and Mr. Arrington after the incident, and recorded officer interviews, "no other recordings, videos, and digital images were discovered." Video recordings of the incident show the highest ranking officer at the scene recording the incident with what appears to be a cell-phone.

(d)    The police report states that Mr. Arrington was repeatedly given verbal demands to stop resisting. Video recordings of the incident show no evidence that that any officers gave this command. Furthermore, there was no evidence of any resistance by Mr. Arrington in the video recording. Additionally, Mr. Arrington's Faretta Waiver was found to be incomplete, although signed by the court.

## DEFENDANTS HAVE ENGAGED IN A PATTERN AND PRACTICE OF EXCESSIVE FORCE USED AGAINST HOMELESS PERSONS WITH MENTAL ILLNESS

28.    As documented in "No Safe Place: The Criminalization of Homelessness in U.S. Cities," cities are increasingly using the criminal justice

COMPLAINT FOR DAMAGES

system to remove homeless people from public places by criminalizing their presence there, setting the stage for the kind of treatment inflicted on Mr. Arrington and others.

29.     The police beating and tasering of Mr. Arrington on August 7, 2014 is just one example of the violence now being inflicted on homeless and mentally ill Americans across the country and in Los Angeles. Mr. Arrington's experience mirrors other highly publicized incidents in which mentally ill or homeless people were attacked or killed by police in recent years.

30.     On June 1, 2014, Marlene Pinnock, a mentally ill woman was savagely beaten by a California Highway Patrol officer in Los Angeles in 2014.

31.     In August 2014, Ezell Ford, a mentally ill man, was shot to death by Los Angeles police.

32.     On May 6, 2015, Brendan Glenn was fatally shot by Los Angeles police on the Venice Boardwalk not far from the location of Mr. Arrington's violent encounters with the LAPD.

33.     On June 27, 2011 at approximately 10:13 p.m., Mr. Arrington was severely beaten by four Los Angeles police officers. He was immediately hospitalized due to his injuries, which included an approximately 8-inch gash in his head that required 18 staples to close. Mr. Arrington was held in jail for over 18 months where he suffered repeated seizures, episodes of fainting, syncope, vertigo, tinnitus, and severe headaches. He was charged with battery, assault with a deadly weapon on a peace officer, and felony resisting arrest.

34.     Mr. Arrington was again tasered and beaten by Los Angeles police officers on January 5, 2014, and was hospitalized at West Hills Hospital and Medical Center due to his injuries, which included a laceration to the back of his head, a puncture wound to his stomach, and injuries to his neck and back. Mr. Arrington was charged with resisting arrest.

35.     On July 29, 2014, Mr. Arrington was again beaten without

COMPLAINT FOR DAMAGES

1  provocation by four City of Los Angeles police officers, two of whom were later

2  involved in the August 7, 2014 incident involving Plaintiff. Due to the injuries to

3  his neck, back, shoulders and wrists, he was hospitalized at Marina Del Rey

4  Hospital. Mr. Arrington was charged with resisting arrest.

5      36.    In the aftermath of the events of August 7, 2014 that were captured on

6  video, Mr. Arrington was hospitalized with injuries to his face, and upper and

7  lower extremities. He was charged with felony resisting arrest. The extent of the

8  damage to his body and mind as a result of the systematic brutality he has endured

9  over the last four years is currently unknown.

10

11  **DEFENDANTS HAVE ENGAGED IN CRIMINAL POLICE MISCONDUCT**
   **TOWARDS MR. ARRINGTON**

12

13      37.    Plaintiff is informed and believes and thereon alleges, based on video

14  recordings and witness testimony, that Defendants Daniel Ramirez, Jayson Siller,

15  Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, and Kevin

16  Shaw perjured themselves in the police report of the August 7, 2014 incident, and

17  that despite his plea, Mr. Arrington did not resist arrest.

18      38.    Indeed, as previously stated and reiterated here, there were several

19  major discrepancies between the LAPD version of events in the police reports,

20  signed under penalty of perjury, and what transpired in video recordings obtained

21  of the August 7, 2014 incident:

22      (a)    The police report states as justification for the use of force on Mr.

23             Arrington that after uniformed police officers made contact with Mr.

24             Arrington for an LAMC violation, "Suspect Arrington lunged at one

25             of the officers and attempted to grab his Sam Browne." Video

26             recordings of the incident do not show Mr. Arrington lunging towards

27             LAPD officers at any point.

28      (b)    The police report states that before the officers moved Mr. Arrington

COMPLAINT FOR DAMAGES

off of his chair, "officers grabbed Mr. Arrington's arm" and "Mr. Arrington immediately broke the officers hold by aggressively moving his arms forward and then pulling his arms toward his body," and subsequently began yelling profanities. Again, video recordings of the incident show no evidence of this behavior by Mr. Arrington.

(c)    The police report states that other than photographs taken of the officers and Mr. Arrington after the incident, and recorded officer interviews, "no other recordings, videos, and digital images were discovered." Video recordings of the incident show the highest ranking officer at the scene recording the incident with what appears to be a cell phone.

(d)    The police report states that Mr. Arrington was repeatedly given verbal demands to stop resisting. Video recordings of the incident show no evidence that that any officers gave this command.

39.    Plaintiff is informed and believes that Defendant Police Officers generated knowingly false reports in an attempt to justify the excessive force used by Defendants Daniel Ramirez, Jayson Siller, Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, and Kevin Shaw, despite knowledge that Plaintiff did nothing to justify nor warrant the use of excessive force on his person by Defendants.

40.    Furthermore, with the knowledge that they were perpetrating a fraud on the judicial system, with knowledge that Plaintiff was not guilty of any crime, including the crime of resisting arrest, and with knowledge that they had manipulated the police report in a continued effort to promote their attempts to conceal the truth about the unwarranted and "excessive" use of force by Defendant Police Officers, Defendant Police Officers presented their reports to the LAPD, knowing they would be believed despite their falsity, simply because they were law enforcement personnel and Plaintiff was a mentally disabled homeless man of

COMPLAINT FOR DAMAGES

1   African-American descent, and knowing that criminal charges would therefore
2   follow. These false reports were designed to mislead the prosecutor's office into
3   relying on the Defendants' ostensible credibility and to thereby file false charges
4   against Plaintiff. As a result, the District Attorney's Office relied solely on the
5   reports, and indeed did file criminal charges against Plaintiff and proceeded to
6   prosecute him.

7       41.    Plaintiff's life and freedom were taken and placed in severe jeopardy
8   by the wrongful conduct of these Defendant Police Officers. Plaintiff was
9   thereafter convicted of misdemeanor resisting arrest based on false charges.

10                                    **DAMAGES**

11      42.    While unarmed, presenting no threat to anyone, and doing nothing
12  illegal, Mr. Arrington, a 52-year-old mentally ill homeless man was repeatedly
13  punched, shot multiple times with a Taser, and hog-tied by eight (8) LAPD
14  officers, causing him to sustain severe muscle trauma, Taser marks to his head and
15  abdomen, and injuries to his upper and lower body extremities, including his arms,
16  shoulders, neck, and back. Plaintiff continues to experience heart problems, blurry
17  vision, severe headaches, and extreme pain, as well as the following damages:
18  humiliation, physical distress, inconvenience, emotional distress, mental anguish,
19  pain and suffering, and loss of bodily functioning.

20      43.    Defendant City of Los Angeles is liable under the principles of
21  *respondeat superior* for the state law claims presented herein pursuant to Section
22  815.2 of the California Government Code for the acts of its employees named
23  herein, who at all times alleged were acting in the course and scope of their
24  employment.

25      44.    Plaintiff is required to comply with administrative tort claim
26  requirements under California law. Plaintiff has complied with all such
27  requirements.

28      45.    Plaintiff was required to hire attorneys to vindicate his rights and is

COMPLAINT FOR DAMAGES

1    entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

2                                    **V.**

3                        **FIRST CAUSE OF ACTION**

4    **VIOLATION OF CIVIL RIGHTS: EXCESSIVE USE OF FORCE**

5    *(Plaintiff as against Defendants Ramirez, Siller, Perez, Jaurez, Ruiz, Kwon,*

6                              *Bedevyan, and Shaw)*

7        46.    Plaintiff hereby realleges and incorporates by reference the allegations

8    contained in all paragraphs above as though fully set forth herein.

9        47.    This action is brought pursuant to 42 U.S.C. Section 1983, and the

10   Fourth Amendment of the United States Constitution.

11       48.    At all times relevant hereto, Plaintiff possessed the right, guaranteed

12   by the Fourth Amendment of the United States Constitution, to be free from

13   unreasonable searches, seizures, and the excessive use of force by police officers

14   acting under the color of law.

15       49.    As described herein above, Defendants Daniel Ramirez, Jayson Siller,

16   Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, and Kevin

17   Shaw violated Plaintiff's Fourth Amendment rights by unlawfully and

18   unreasonably using excessive force in tackling, punching, tasering, and hogtieing

19   Plaintiff without any cause or legal justification.

20       50.    In performing the aforementioned acts, said Defendants acted

21   specifically with the intent to deprive Plaintiff of his Constitutional rights under the

22   Fourth Amendment to be free from unreasonable use of force, rights of which as

23   police officers, they were fully aware.

24       51.    Said Defendants subjected Plaintiff to the aforementioned

25   deprivations with either actual malice, deliberate indifference, or a reckless

26   disregard of his rights under the United States Constitution.

27       52.    As a direct and proximate result of the aforementioned acts of said

28   Defendants, Plaintiff suffered the violation of his Constitutional rights as described

COMPLAINT FOR DAMAGES

above. Plaintiff has sustained severe and permanent physical, emotional and psychological injuries, which have caused him to seek the care of hospitals, physicians, surgeons, and other professional medical personnel. The amount of damages suffered by Plaintiff will be subject to proof at the time of trial, and exceeds the jurisdictional amount of this Court.

53.    The aforementioned acts of said individual Defendants were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said individual Defendants.

## VI.

## SECOND CAUSE OF ACTION

## FAILURE TO INTERVENE TO PREVENT

## VIOLATION OF CIVIL RIGHTS

***(Plaintiff as against Defendants Theresa Skinner, Omar Ortiz, Hooman Nafissi, Inez Miller, Arthur Paine, Gregory Roberts, and Doe Defendants 1 through 10)***

54.    Plaintiff hereby realleges and incorporates by this reference the allegations contained in all paragraphs above as though fully set forth herein.

55.    This action is brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment of the United States Constitution.

56.    At all times relevant herein and during all acts, conduct, failures and omissions relevant to Plaintiff's mistreatment, Defendants Theresa Skinner, Omar Ortiz, Hooman Nafissi, Inez Miller, Arthur Paine, Gregory Roberts and DOE Defendants 1 through 10 were present at said times and places as alleged and were charged with the Constitutional duties of the protection of Plaintiff and his rights, and each was charged with the duty to not knowingly, nor with wanton disregard, allow, permit, or fail to intervene in the wrongful and illegal acts of the other Defendant police officers at the scene and thereafter when they knew or should have known of criminal efforts by said Defendant police officers to cover up the use of excessive force by Defendants Daniel Ramirez, Jayson Siller, Leo Perez,

COMPLAINT FOR DAMAGES

Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, and Kevin Shaw.

57.    On said dates, times and locations as alleged above, each said Defendant herein was in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted use of force toward Plaintiff.

58.    On said dates, times and locations as alleged above, each said Defendant had ample and reasonably sufficient time and opportunity to so intervene and prevent the wrongful conduct of the other officers, to prevent the violations against Plaintiff and to timely intercede, and indeed were compelled to do so as a sworn Police Officer under the laws of the State of California and under the Constitution of the United States of America.

59.    On said dates, times and locations as alleged above, in deliberate indifference to the life, rights, safety and welfare of Plaintiff, each said Defendant intentionally and with deliberate indifference to the civil rights of Plaintiff, refrained from intervening in the acts leading to the use of excessive force, and thereafter refrained from intervening so that Plaintiff would not be so subjected.

60.    As a result thereof, Plaintiff, as alleged, was unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference, exposed to the injuries, damages, and harm by said Defendants as alleged in the First Cause of action.

61. The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these individual Defendants in their respective individual capacity.

## VII.

## THIRD CAUSE OF ACTION

## *MONELL* CLAIM UNDER 42 U.S.C. SECTION 1983

### *(Plaintiff as against Defendant City of Los Angeles)*

62.    Except as to the punitive damages allegations, Plaintiff hereby realleges and incorporates by this reference the allegations contained in all paragraphs above as though fully set forth herein.

17

63. At all times relevant herein, DOE Defendants 1 through 10, inclusive, were supervisors and/or policy makers for the City of Los Angeles Police Department, which through gross negligence and indifference to the Constitutional rights of citizens, employed, maintained and permitted an official policy and custom of permitting, allowing, ratifying and condoning the occurrence of the types of wrongs and misconducts set forth herein, particularly, the use of excessive force against homeless persons with mental illness, including Mr. Arrington. Said misconduct was encouraged, tolerated and condoned by said Defendants.

64.    On the date of Plaintiff's arrest and the false reporting of resisting arrest as alleged above, Police Officer Defendants, acting within the course and scope of their duties as peace officers of the City of Los Angeles, deprived Plaintiff of  his rights to be free from unreasonable seizure as delineated herein above, and thereafter in violation of Plaintiff's due process rights, proceeded to falsify, fabricate, conceal and alter evidence, and submit false police reports so that Plaintiff would be found guilty of resisting arrest.

65.    Said policies, procedures, customs, and practices called for the City of Los Angeles and its Police Department not to discipline, prosecute, or objectively and/or independently investigate, or in any other way, deal with or respond to known incidents and complaints of falsification of evidence, the preparation of false police reports to justify such wrongful conduct, the covering up and concealing of such wrongful conduct by the LAPD, and the failure to objectively and/or independently investigate, or in any other way, deal with or respond to the related claims and lawsuits made as a result of such false charges and related misconduct.

66.    Said policies, procedures, customs, and practices called for and led to the refusal of said Defendant City of Los Angeles to investigate complaints of previous incidents of the filing of false police reports to conceal excessive force misconduct, the falsification of evidence and perjury and, instead, officially claim

COMPLAINT FOR DAMAGES

that such incidents were justified and proper.

67.   Said policies, procedures, customs, and practices called for said Defendants, by means of inaction and cover-up, to encourage an atmosphere of lawlessness within the LAPD, and to encourage their police officers to believe that the use of excessive force on residents of Los Angeles or persons present therein, including persons with mental illness and the homeless, the submission of false police reports, and the commission of perjury was permissible, and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

68.   Said policies, procedures, customs, and practices of said Defendant City of Los Angeles has evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiff.  This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs, and practices in light of prior knowledge by said Defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified and unreasonable and unlawful force, falsification of evidence, submission of false police reports, and perjury.

69.   Deliberate indifference to the civil rights of the homeless, persons with mental illnesses, and other victims of the Los Angeles Police Department, including the use of unreasonable and excessive force, falsified evidence, false and misleading police reports, and false and perjurious testimony was also evidenced by said Defendants by their ignoring of the history and pattern of prior civil lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments to such individuals.

70.   Plaintiff is informed and believes, and therein alleges that these customs, practices and policies were the moving force behind the violations of Plaintiff's rights. Based upon the principles set forth in *Monell v. New York Dept. Of Social Services*, the City of Los Angeles is liable for all of the injuries and

COMPLAINT FOR DAMAGES

1  damages sustained by Plaintiff as set forth above.

## VIII.

## FOURTH CAUSE OF ACTION

## FAILURE TO REASONABLY ACCOMMODATE DISABILITY

### (ADA Claim Under 42 U.S.C. Section 12132)

### *(Plaintiff As Against Defendant City of Los Angeles)*

71.   Plaintiff hereby realleges and incorporates by this reference the allegations contained in all paragraphs above as though fully set forth herein, and further alleges that Defendant City of Los Angeles failed to train, supervise, and/or discipline Defendants Daniel Ramirez, Jayson Siller, Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, Kevin Shaw, Theresa Skinner, Omar Ortiz, Hooman Nafissi, Inez Miller, Arthur Paine, Gregory Roberts, and/or DOE Defendants 1 through 10, to recognize symptoms of disability under Title II of the Americans With Disabilities Act ("ADA"). Furthermore, Defendant City of Los Angeles failed to prevent Defendant Police Officers from excluding qualified individuals such as Mr. Arrington from participation in benefits or services provided by the City of Los Angeles, or otherwise preventing discrimination against Mr. Arrington with symptoms of disability recognized under Title II of the ADA. Defendants' failure to accommodate Mr. Arrington's disability resulted in the beating, tasering, and other use of unreasonable and excessive force against Mr. Arrington, and consequently caused him significant injury.

72.   At no time were Defendant Police Officers Daniel Ramirez, Jayson Siller, Leo Perez, Robert Jaurez, Steve Ruiz, Jin Kwon, Anaid Bedevyan, Kevin Shaw, and/or DOE Defendants 1 through 10, faced with a reasonable exigency when they tackled, punched, tasered, and hog-tied Plaintiff on the Venice Beach Boardwalk in front of hundreds of spectators. At least four of the Defendants were aware of Mr. Arrington's recognized disability, including its symptoms and manifestations, and thereafter excluded Mr. Arrington from participation in and/or

COMPLAINT FOR DAMAGES

denied Mr. Arrington the benefit of Defendant City of Los Angeles's applicable programs and activities, and/or discriminated against Plaintiff on the basis of his recognized disability.

## IX.

## FIFTH CAUSE OF ACTION

## VIOLATION OF BANE ACT

### (Cal. Civil Code § 52.1)

### *(Plaintiff As Against All Defendants)*

73.    Plaintiff hereby realleges and incorporates by this reference the allegations contained in all paragraphs above as though fully set forth herein.

74.    As alleged herein, Defendants interfered by threats, intimidation, or coercion with Mr. Arrington's rights under state and federal laws and under the state and federal Constitution, including without limitation, the right to be free from excessive force and the right to bodily integrity, including his rights under Civil Code Section 43, Penal Code Sections 149, 240, and 242, his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and his rights under Article 1, Section 1, 7, and 13 of the California Constitution.

75.    As a result of their conduct, Defendants are liable for Mr. Arrington's injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

76.    As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including loss of enjoyment of life, pain and suffering, physical injuries, emotional distress, medical expenses, attorneys' fees, and costs of suit.

77.    As a result thereof, Plaintiff, as alleged was unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference, exposed to the injuries and damages and harm by said Defendants as alleged in the First Cause of action.

78.    The acts and omissions constituting this cause of action were

COMPLAINT FOR DAMAGES

purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these individual Defendants in their respective individual capacity.

## X.

## SIXTH CAUSE OF ACTION

## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Plaintiff As Against All Defendants)*

79.    Plaintiff hereby realleges and incorporates by reference the allegations contained in all paragraphs above as though fully set forth herein.

80.    Said Defendants' conduct in unlawfully and unjustifiably beating, tasering, and hogtieing Plaintiff, subsequently arresting Plaintiff for resisting arrest, falsifying reports, and all else as alleged, was outrageous and exceeded the bounds of conduct usually tolerated in this society.  Defendant City of Los Angeles is liable under the principles of *respondeat superior* for the aforementioned acts of Defendant Police Officers pursuant to California Government Code Section 815.2.

81.    Said Defendants, in engaging in the aforementioned conduct, intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred.

82.    Said Defendants' conduct was a substantial factor in causing Plaintiff to suffer and to continue to suffer from severe emotional distress, mental pain, anguish and psychological disturbance.  Plaintiff has suffered special and general damages as a result of the emotional distress, mental pain, anguish, and psychological disturbance in an amount according to proof at trial in excess of this Court's jurisdiction.

83.    The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said Defendants.

COMPLAINT FOR DAMAGES

# XI.

## SEVENTH CAUSE OF ACTION

## FOR ASSAULT AND BATTERY

### *(Plaintiff As Against Defendants Ramirez, Siller, Perez, Jaurez, Ruiz, Kwon, Bedevyan, and Shaw)*

84.     Plaintiff hereby realleges and incorporates by reference the allegations contained in all paragraphs above as though fully set forth herein.

85.     In unjustifiably and unlawfully beating, tasering, and hogtieing Plaintiff, Defendants Ramirez, Siller, Perez, Jaurez, Ruiz, Kwon, Bedevyan, and Shaw touched Plaintiff with the intent to harm or offend him, or touched Plaintiff with a willful disregard of his rights. Plaintiff did not consent to this harmful and offensive touching. Defendant City of Los Angeles is liable in *respondeat superior* for the aforementioned acts of Defendant Police Officers pursuant to California Government Code Section 815.2.

86.     As a direct and proximate result of said Defendants' conduct, Plaintiff has suffered serious physical, psychological and psychiatric injuries, which have forced him to seek treatment from hospitals, physicians, surgeons, and other medical professionals.

87.    The aforementioned acts of said individual Defendants were willful, wanton, malicious, and oppressive, thereby justifying the award of exemplary and punitive damages as to said individual Defendants.

# XII.

## EIGHTH CAUSE OF ACTION

## FOR NEGLIGENCE

### *(Plaintiff As Against All Defendants)*

88.     Except as to allegations of intentional conduct, Plaintiff hereby realleges and incorporates by reference the allegations contained in all paragraphs

COMPLAINT FOR DAMAGES

1    above as though fully set forth herein.

2      89.    As Police Officers, Defendants owed Plaintiff a duty of reasonable

3    care in the performance of their duties.

4      90.    Defendants breached their reasonable duty of care toward Plaintiff by

5    unlawfully and unjustifiably beating and tasering Plaintiff and subsequently

6    hogtieing him upon arrest.  Defendant City of Los Angeles is liable in *respondeat*

7    *superior* for the aforementioned acts of Defendants pursuant to California

8    Government Code Section 815.2.

9      91.    Defendants' conduct was a substantial factor in causing Plaintiff to

10    suffer serious physical, psychological, and psychiatric injuries, which have forced

11    him to seek treatment from hospitals, physicians, surgeons, and other medical

12    professionals. The amount of special damages claimed by Plaintiff will be sought

13    according to proof at the time of trial.

## PRAYER

15      Wherefore, Plaintiff prays for judgment against each Defendant as follows:

16      1.    For compensatory and general damages, past, present and future, and

17          for emotional and psychological pain and suffering, distress and injury

18          in an amount according to proof and in excess of this court's

19          jurisdiction;

20      2.    For punitive or exemplary damages where alleged against the

21          individual defendants only and not as to the City of Los Angeles;

22      3.    For legal interest on the judgment;

23      4.    For attorneys' fees where provided by statute;

24      5.    For costs of the suit incurred herein; and

25      6.    For such other and further relief as the Court may deem just and

26          proper.

27

28

COMPLAINT FOR DAMAGES

1

2  Dated: May 19, 2015                    **HAYSBERT MOULTRIE, LLP**

3

4                              By: _____

5                                   Nazareth M. Haysbert, Esq.

6                                   James L. Moultrie III, Esq.

7                                   *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Samuel Calhoun Arrington, individually, and through his next best friend, Aurelia Cleo Battle, respectfully request that the present matter be set for a jury trial.

Dated: May 19, 2015                    **HAYSBERT MOULTRIE, LLP**

By:    _____
       Nazareth M. Haysbert, Esq.
       James L. Moultrie III, Esq.

       *Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES